IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JERRY S. LINDSEY, :
:
      Plaintiff :
:
   v. : CIVIL NO. 4:CV-08-1683
:
: (Judge McClure)
PAUL M. O'CONNOR, ET AL., :
:
      Defendants :

## **MEMORANDUM**

**October 23, 2008**

**Background**

This *pro se* civil rights action was filed by Jerry S. Lindsey ("Plaintiff" or "Lindsey"), an inmate presently confined at the State Correctional Institution, Graterford, Pennsylvania ("SCI-Graterford"). Plaintiff has submitted an application requesting leave to proceed *in forma pauperis*.[1] For the reasons set forth below, Lindsey's action will be dismissed, without prejudice, as legally frivolous pursuant to the screening provisions of 28 U.S.C. § 1915.

Named as Defendants are Director Paul M. O'Connor of the Pennsylvania

---

[1] Lindsey completed this Court's form application to proceed *in forma pauperis* and authorization to have funds deducted from his prison account. The Court then issued an Administrative Order directing the Warden of SCI-Graterford to commence deducting the full filing fee from Plaintiff's prison trust fund account.

Department of Corrections ("DOC") and the following officials at Plaintiff's prior place of confinement, the State Correctional Institution, Camp Hill, Pennsylvania ("SCI-Camp Hill"): Superintendent Donald Kelchner, Sergeant Lucas and Correctional Officers O'Leary, Simson, and Tomson.

According to the Complaint, Lindsey was transferred to R Block at SCI-Camp Hill on March 3, 2008.[2] Following his arrival, Correctional Officer ("CO") Tomson had a verbal exchange with Lindsey.  As a result, Tomson allegedly confiscated Plaintiff's identification card and failed to return it.  Lindsey next contends that he was subjected to verbal harassment by Defendant O'Leary on March 5, 2008.  CO O'Leary purportedly "was calling into" Plaintiff's cell indicating that Lindsey was sexually attracted to his cell mate.  Record document no. 1, ¶ 8.  The next day, Plaintiff's cell mate was removed.

On March 6, 2007, CO Tomson allegedly told Plaintiff that because he no longer had a cell mate the harassment was "just beginning."  *Id.*  The next day, Defendants Lucas, O'Leary, Tomson and Simson allegedly went to Plaintiff's cell and he "was called out to the bubble [where the officers can open up all of the cells."  *Id.*  While walking to the bubble, Sergeant Lucas allegedly grabbed Plaintiff and "asked me did I see his fist?"  *Id.*  It is asserted that Sergeant Lucas

---

[2] Lindsey indicates that prior to being transferred to R Block he had been housed in the SCI-Camp Hill infirmary for two weeks while undergoing treatment for high blood pressure.  *See* Record document no. 1, ¶ 8.

2

added that the next time he went to see Plaintiff the officer was "going to knock out the rest of my teeths [sic]."  *Id*.  Lucas also purportedly pushed Plaintiff "toward my cell" and threatened to withhold meals from the prisoner.  *Id*.  The next day Lindsey claims that he was denied breakfast.

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages on the basis that Defendants' threats, harassment and use of abusive language violated his constitutional rights.

**Discussion**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed *in forma pauperis*.  § 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

Consequently, federal courts reviewing civil rights complaints filed by persons wishing to proceed *in forma pauperis* may determine that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions.  *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).[3]  In *Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995), the

---

[3] Indisputably meritless legal theories are those "in which it is either readily
(continued...)

Court of Appeals added that "the plain meaning of 'frivolous' authorizes the dismissal of *in forma pauperis* claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." "The frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

**Personal Involvement**

A viable civil rights claim requires two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*,

---

[3](...continued)
apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit." *Roman v. Jeffes*, 904 F.2d 192, 194 (3d Cir. 1990) (quoting *Sultenfuss v. Snow*, 894 F.2d 1277, 1278 (11th Cir. 1990)).

423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).  As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Two of the named Defendants are DOC Director Paul O'Connor and SCI-Camp Hill Superintendent Kelchner.   Plaintiff alleges only that those two Defendants are legally responsible for the operation of SCI-Camp Hill.  *See* Record document no. 1, ¶¶ 4 & 5.  A review of the Complaint shows that there are no assertions that either of those supervisory officials had any involvement, knowledge, or acquiescence in the purported constitutional misconduct.

Since it appears that Lindsey is attempting to establish liability against Defendants O'Connor and Kelchner solely based upon their supervisory roles, under the standards developed in *Rode*, such *respondeat superior* type assertions are clearly insufficient.

Second, while prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's

5

grievance. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).   Based upon an application of those standards, any claims against Defendants O'Connor and Kelchner based upon their decision making with respect to Plaintiff's administrative complaints and grievances would equally lack merit.  Dismissal will be granted in favor of Director O'Connor and Superintendent Kelchner.

**Mental and Emotional Injury**

Plaintiff indicates that he suffered mental and emotional injuries as a result of the Defendants' alleged harassment.  There are no alleged physical injuries described or alleged in the complaint.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.

Under the standards announced in *Allah* and Section 1997e(e), Lindsey's

6

civil rights claims which assert violation of his constitutional rights and seek in part an award of compensatory damages can proceed only to the extent that they seek non-compensatory damages.  *See Ostrander v. Horn*, 145 F. Supp. 2d 614, 618 (M.D. Pa.  2001).

**Mootness**

It is well settled that the adjudicatory power of a federal court depends upon "the *continuing* existence of a live and acute controversy." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (emphasis in original). "[a]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id*. at n.10 (citations omitted).  "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

If a prisoner has been transferred, his claim for injunctive and declaratory relief in a section 1983 action generally fails to present a case or controversy. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); *see also Carter v. Thompson*, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

In his Complaint, Lindsey clearly acknowledges that he is longer confined at SCI-Camp Hill and is presently incarcerated at SCI-Graterford.   There is no indication that Lindsey will be returned to SCI-camp Hill in the foreseeable future.

As a result of his transfer, Plaintiff is no longer being subject to the

7

harassment which allegedly transpired at SCI-Camp Hill and which is the subject of his present action.  Consequently, Lindsey's requests for injunctive and declaratory relief are subject to dismissal on the basis of mootness under the standards announced in *Steffel* and *Wahl*.

**Verbal Harassment**

It has been recognized that the use of words generally cannot constitute an assault actionable under § 1983. *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); and *Jones v. Superintendent*, 370 F. Supp. 488, 491 (W.D. Va. 1974).

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *Fisher v. Woodson*, 373 F. Supp. 970, 973 (E.D. Va. 1973); *see also Balliet v. Whitmire*, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, *see Prisoners' Legal Ass'n*, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause, *see Pittsley v.*

8

*Warish*, 927 F.2d 3, 7 (1st Cir. 1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); *Douglas v. Marino*, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. *Bieros v. Nicola,* 860 F. Supp. 226, 233 (E.D. Pa. 1994); *see also Prisoners' Legal Ass'n*, 822 F. Supp at 189; *Murray*, 809 F. Supp. at 384.

Lindsey asserts that he was subjected to sexually derogatory remarks and verbal threats by Defendants O'Leary and Tomson during a three (3) day period in March, 2008. Those alleged instances of verbal harassment were not accompanied by any physical contact and thus, are constitutionally insufficient. *See Hart v. Whalen*, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008).

It is also alleged that Sergeant Lucas verbally threatened him while making a fist on a single occasion during that period. Plaintiff also alleges that he was grabbed and pushed by Sergeant Lucas during this incident.

There is no indication that any of the verbal threats were accompanied by a

9

reinforcing act involving a deadly weapon as contemplated under *Northington* and *Douglas*. It has also been recognized that the clenching of a fist lacks the magnitude to escalate a threat beyond mere words. *See Wright v. O'Hara*, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fit were constitutionally insufficient because there was no physical contact). Moreover, in a similar case this Court concluded that a verbal threat accompanied by a one time slap to the back of the head did not set forth a viable constitutional claim. *See Cyrus v. Hogsten* 2007 WL 136747 *9 (M. D. Pa. Jan. 16, 2007)

A review of the Complaint also shows that the alleged threats were also not conditioned on the prisoner's exercise of a constitutionally protected right. In addition, there is no claim that Plaintiff suffered a change or denial of a constitutionally protected right or status. Based upon the above discussion, Lindsey's allegations of verbal harassment and gestures by Sergeant Lucas do not rise to the level of a viable civil rights claim.

**Excessive Force**

As noted above, it is asserted that Sergeant Lucas grabbed and pushed Lindsey on March 7, 2008. In order to constitute cruel and unusual punishment, a correctional officer's use of force must involve the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that

conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id*.

"Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973). In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)(even a *de minimis* use of force, if repugnant to the conscience of mankind, may be constitutionally significant). The degree of injury, if any, although not necessarily dispositive, is still a relevant factor in the determination of the excessiveness of the force used. *See Brooks*, 204 F.3d at 106. As explained in *Fuentes*:

> We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to

>inflict unnecessary and wanton pain. 'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'

206 F.3d at 344.

In this case, Lindsey does not allege that he sustained <u>any</u> physical injury whatsoever. There is no allegation that the physical contact by Sergeant Lucas was undertaken in a deliberate attempt to inflict pain. Even if proven, it simply could not be said that the purported *de minimis* physical contact by Lucas offended contemporary standards of decency so as to constitute cruel and unusual punishment. *See Hudson*, 503 U.S. at 9 (constitutional protection does not extend to every malevolent touch by a prison guard); *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002)("the Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force"); *Ruta v. Morris*, 2007 WL 3342771 *3 (M.D. Pa. Nov. 7, 2007)(Vanaskie, J.)( although the least unpermitted and intentional touching of another is a battery, it is not necessarily a constitutional violation) . It is apparent that the physical contact at issue herein is the same type of *de minimis* physical contact which the above cited decisions and this Court's ruling in *Cyrus* found to be constitutionally lacking. The minor physical contact alleged herein by Lindsey simply lacks the degree of malice necessary to set forth a viable constitutional excessive force violation.

**<u>Denial of Food</u>**

Plaintiff also indicates that Sergeant Lucas was responsible for a denial of breakfast which occurred on March 8, 2008. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This Amendment must be interpreted in accordance with "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). However, a judge, when confronted with an Eighth Amendment claim, may not impose upon a prison his or her "notions of enlightened policy." *Hassine v. Jeffes*, 846 F.2d 169, 175 (3d Cir. 1988).

In order to implicate the Eighth Amendment, a condition of confinement must be so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*

This purported deprivation of a single meal is simply not of such magnitude as to rise to the level of an Eighth Amendment violation. *See Robles v. Coughlin*,

13

725 F.2d 12, 15 (2nd Cir. 1983)(only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim); *Warren v. Irvin*, 985 F. Supp. 350 (W.D. N.Y. 1997); *Williams v. Berge*, 2002 WL 32350026 *2 (W.D. Wis. 2002); *Moss v. Ward*, 450 F. Supp. 591, 596 (W.D. N.Y. 1978)(deprivation of one meal may not be cruel and unusual punishment).

**Identification Card**

A § 1983 claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act of a state employer and where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state. *Parratt v. Taylor*, 451 U.S. 527, 543-544 (1981).

The United States Supreme Court extended *Parratt* to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a claim under § 1983 is not available. *Hudson v. Palmer*, 468 U.S. 517, 532-533 (1984). Consequently, regardless of whether the taking of Plaintiff's identification card was the result of intentional or negligent conduct, he may not obtain relief under § 1983 if he has adequate remedies available under state law.

Since Lindsey clearly has administrative relief available to him via the DOC's administrative review system as well as Pennsylvania state court remedies, entry of dismissal with respect to Plaintiff's deprivation of identification card claim

is appropriate.[4]

**Conclusion**

Since Plaintiff's complaint is "based on an indisputably meritless legal theory" it will be dismissed, without prejudice, as legally frivolous. *Wilson*, 878 F.2d at 774. An appropriate Order will enter.


    s/ James F. McClure,Jr.
JAMES F. McCLURE, JR.
United States District Judge


IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


JERRY S. LINDSEY,                           :

---

[4] It is noted that an exhibit attached to the Complaint provides that after Plaintiff filed an administrative grievance regarding the loss of his identification card, prison officials agreed to order him a new identification card. *See* Record document no. 1, Exhibit B.

|  |  |  |
|---|---|---|
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-08-1683 |
| | : | |
| PAUL M. O' CONNOR, ET AL., | : | (Judge McClure) |
| | : | |
| Defendants | : | |

# **ORDER**

October 23, 2008

In accordance with the accompanying Memorandum**, IT IS HEREBY ORDERED THAT:**

    1.    Plaintiff's complaint is dismissed without prejudice as frivolous pursuant to 28 U.S.C. § 1915 (e)(2)(B)(I).

    2.    The Clerk of Court is directed to close the case.[5]

    3.    Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

    s/ James F. McClure,Jr.
    JAMES F. McCLURE, JR.
    United States District Judge

---

[5] Dismissal of this action does not relieve Plaintiff of the obligation to pay the full filing fee. Until the filing fee is paid in full, the Administrative Order issued is binding on the Warden of SCI-Graterford, as well as the Superintendent of any correctional facility to which Plaintiff is transferred.